FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 19 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT VEGA, SR. et al., | ) |
| Plaintiffs, | ) |
| vs. | ) 3:10-cv-00405-RCJ-VPC |
| CTX MORTGAGE CO., LLC et al., | ) ORDER |
| Defendants. | ) |

This is a standard foreclosure case involving one property. The case is not part of MDL Case No. 2119. The Complaint is a class action complaint, but no motion to certify a class has been filed. Two motions to dismiss are pending before the Court.

## I.   THE PROPERTY

Plaintiffs Robert Vega, Sr. and Mele L. Vega gave mortgages to CTX Mortgage Co., LLC ("CTX") for $369,900 and $100,000, in order to purchase a home at 4079 Talladega Dr., Sparks, NV 89436 (the "Property") and to open a line of credit against the Property, respectively. (*See* First Deed of Trust ("FDOT") 1–3, July 15, 2005, ECF No. 22-1, at 2; Second Deed of Trust ("SDOT") 1–2, Oct. 14, 2005, ECF No. 22-3, at 2). The trustees on the deeds of trust were John L. Matthews and Timothy M. Bartosh. (*See id.*). In December 2009, LSI Title Agency ("LSI"), as agent for Cal-Western Reconveyance Corp. ("Cal-Western"), filed a Notice of Default ("NOD") under the FDOT due to Plaintiffs' default in April 2009. (*See* NOD, Dec. 29,

2009, ECF No. 22-4, at 2). Cal-Western had been substituted in as trustee by Chase Home Finance, LLC ("Chase") on Dec. 24, 2009. (*See* Substitution of Trustee, Dec. 24, 2009, ECF No. 22-6, at 2). A trustee's sale was scheduled for June 23, 2010. (Notice of Trustee's Sale, May 25, 2010, ECF No. 22-7, at 2).

## II. ANALYSIS

The foreclosure may have been statutorily defective. *See* Nev. Rev. Stat. § 107.080(2)(c). Mortgage Electronic Registration Systems ("MERS") purported to transfer "all beneficial interest under [the FDOT]" to Chase on Dec. 24, 2009. (*See* Assignment, Dec. 24, 2009, ECF No. 22-5, at 2). Regardless of the language in the FDOT, MERS is not in fact the beneficiary because it does not own the debt. MERS also does not have the ability to transfer the interest in the loan without more evidence of its agency on behalf of CTX in this regard than being named as nominee on the FDOT. In other words, based on the evidence produced, the FDOT remains with CTX at this point, or with whatever entity currently holds the note, by operation of law. Chase potentially has a worthless piece of paper, because it has an "assigned" deed of trust without having had the note that the deed of trust secures negotiated to it. *See Rodney v. Ariz. Bank*, 836 P.2d 434, 436 (Ariz. App. 1992) (quoting *Hill v. Favour*, 52 Ariz. 561, 568 (1938)); *Ord v. McKee*, 5 Cal. 515, 515 (1855) ("A mortgage is a mere incident to the debt which it secures, and follows the transfer of the note with the full effect of a regular assignment."). MERS purported in the "Assignment of Deed of Trust" to transfer the "beneficial interest" to Chase for value, which would in fact give Chase the right to enforce the note even without negotiation, *see* Nev. Rev. Stat. § 104.3203(2), but MERS likely did not have the ability to make such a transfer.[1] Based on the available evidence, the foreclosure may have been statutorily

---

[1] Chase could cure this defect via an affidavit from CTX indicating that CTX specifically commanded MERS to transfer CTX's interest in the note to Chase, or that MERS' agency for CTX extended this far as a general matter under the FDOT.

Page 2 of 9

invalid because Cal-Western filed the NOD, and although it had been substituted as trustee, it was substituted in by Chase, which may not have had the beneficial interest because it is not clear MERS was able to transfer it to Chase by merely purporting to assign the deed of trust.[2]

Plaintiffs submitted supplemental authority, which was discussed at the hearing. That persuasive authority is a recent order of a judge of Nevada's Second Judicial District Court. That court correctly noted that the Nevada Supreme Court had never explicitly adopted the "mortgage follows the note" rule (the "Traditional Rule"), and the court anticipated that because the Nevada Supreme Court had adopted the Restatement (Third) of Property (Mortgages) in other contexts, that it would also adopt § 5.4 of the Restatement, which differs from the Traditional Rule. The Court finds that even if this is correct, it does not aid Plaintiffs in this case and might in fact destroy the only cause of action that survives in this case and similar ones.

The Traditional Rule is that the mortgage or deed of trust (the security instrument) automatically follows the secured debt, but not vice versa.[3] Under the Traditional Rule, when one purports to assign a mortgage without the underlying debt, the mortgage is "split" such that

---

[2]Recently, the Supreme Judicial Court of Massachusetts also ruled that foreclosures under its non-judicial foreclosure statutes are improper when the foreclosing entity cannot show its interest in the mortgage at the time of notice and sale. *See U.S. Bank Nat'l Ass'n v. Ibanez*, No. SJC-10694, 2011 WL 38071, at *9 (Mass. Jan. 7, 2011) ("[T]he foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale (or the foreclosing entity must be one of the parties authorized to foreclose under G.L. c. 183, § 21, and G.L. c. 244, § 14).").

[3]Massachusetts follows a variation of the Traditional Rule, under which a mortgage does not follow the note as a matter of law, but the transferor of the note is said to hold the mortgage in trust for the transferee, who may initiate an equitable action to force a transfer of the mortgage. *See Ibanez*, No. SJC-10694, 2011 WL 38071, at *10 (citing *Barnes v. Boardman*, 21 N.E. 308 (Mass. 1889)). In other words, if the transferor of a promissory note does not also transfer the mortgage, he becomes the transferee's trustee under the mortgage, because the equitable interest in the mortgage follows the note as a matter of law even if the legal title does not. In substance, then, Massachusetts follows the Traditional Rule; it is just that the transferee of a promissory note may have to expend some legal fees to get the mortgage papers in his hands if the transferor of the note for some reason refuses to give them over.

neither the owner of the debt nor the owner of the mortgage may foreclose, because the former has no security instrument and the latter can suffer no default. The Restatement decisively fixes the problem by providing that whether the debt or the mortgage is separately transferred, the one automatically follows the other, unless the parties agree otherwise:

> (a) A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.
>
> (b) Except as otherwise required by the Uniform Commercial Code, *a transfer of a mortgage also transfers the obligation the mortgage secures* unless the parties to the transfer agree otherwise.

Restatement (Third) of Property (Mortgages) § 5.4(a)–(b) (1997) (emphasis added). The new rule proposed in the Restatement thus binds the note and the mortgage as a matter of law, as if the two agreements (the promissory note and the mortgage) simply appeared on consecutive pages of the same document. This is a sensible rule, because the modern reality is that both lender and purchaser view the giving of the loan and the giving of security therefor as a single, integrated agreement, and the funds on a promissory note are invariably transferred contemporaneously with the signing of the security for the promissory note (the mortgage) at the "closing" of a loan—it is essentially a single transaction. The commentary is instructive:

> The essential premise of this section is that it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same person. This is so because separating the obligation from the mortgage results in a practical loss of efficacy of the mortgage; see Subsection (c) of this section. When the right of enforcement of the note and the mortgage are split, the note becomes, as a practical matter, unsecured. This result is economically wasteful and confers an unwarranted windfall on the mortgagor.

*Id.* cmt. a.

The Restatement would make it legally impossible (as a default rule) to split the mortgage such that it becomes unenforceable, and it would accomplish this by making it possible to do what one could never have done under the Traditional Rule: transfer the debt secured by a mortgage by separately assigning the mortgage itself. *See id.* § 5.4(b) & cmt. c. Incidentally, in

Nevada the UCC is no bar to a subsection (b) transfer, because the debt represented by a promissory note may be assigned without a traditional negotiation. Nev. Rev. Stat. § 104.3203(2).

The Restatement goes on to provide that "[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures." Restatement (Third) of Property (Mortgages) § 5.4(c) (1997). Read in conjunction with NRS section 104.3203(2) and subsections (a) and (b) of the Restatement, subsection (c) appears to provide any assignee of the underlying debt or mortgage with the ability to enforce a foreclosure, unless the parties have agreed otherwise. Because each transfer of the note or mortgage effectively transfers both, the last entity to have the note, mortgage, or both transferred to it would have the ability to foreclose. Subsection (c) does not even require by its terms that the foreclosing entity be a holder in due course, but only that it be "entitled to enforce the obligation," *id.*, and under Nevada law, any transfer of an instrument, by negotiation or otherwise, gives the transferee the same rights to enforce the instrument as the transferor had, including the rights of a holder in due course. Nev. Rev. Stat. § 104.3203(2). Therefore, if the Restatement controls and not the Traditional Rule, MERS' transfers of "beneficial interest under [the deed of trust]"—as MERS' transfers are typically worded—would in fact be legitimate transfers of both the notes and deeds of trust, because although it is not clear MERS has the ability to transfer the debt directly, as the lender's "nominee" on a deed of trust it at least has the ability to transfer the deed of trust itself, just as it may substitute trustees under the deed of trust, and under the Restatement the interest in the note would follow the deed of trust as a matter of law.

It may not be in the best interest of plaintiffs in these cases to attempt to convince the Court that the Restatement, and not the Traditional Rule, controls the transfer of mortgages in Nevada. If the Restatement is the alternative, then the Traditional Rule is the only thing currently supporting injunctions for statutorily defective foreclosures under NRS section

107.080(2)(c) in most of these cases, because it appears that the MERS-style assignment of a deed of trust would in fact be perfectly legitimate and effective under the Restatement to transfer the beneficial interest in a promissory note.[4]

This Court agrees with the state trial court's view that only the beneficiary of the debt secured by a mortgage, the trustee, or an agent of one of these, may foreclose. *See* Nev. Rev. Stat. § 107.080(2)(c). This is precisely why the Court has consistently required defendants in these cases to "put their ducks in a row" with respect to the sequence of debt assignment, trustee substitution, and NOD filing. But insofar as the state court meant to indicate that there is no ability to enforce a mortgage default unless a party has had a promissory note negotiated to it in the traditional way, the Court respectfully disagrees. Nevada law unambiguously gives the transferee of an instrument such as a promissory note the same rights to enforce it as the transferor had, including rights as a holder in due course, regardless of whether the instrument was transferred by traditional negotiation. Nev. Rev. Stat. § 104.3203(2) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course . . . ."). This

---

[4] Even under the Traditional Rule, it may be the case that MERS may transfer a note and mortgage on its own after being named as "nominee" on a deed of trust. The Court has often ruled that assignments of deeds of trust wherein MERS purports to transfer the interest in the note and mortgage are not enough evidence to entitle a defendant to dismissal against a claim of statutorily defective foreclosure where the propriety of such a transfer is disputed and dispositive, because the scope of MERS' agency on behalf of the lender is ambiguous where the only evidence of MERS' agency is its designation as a "nominee" or "beneficiary of record" on a deed of trust. But the Court has never ruled that such assignments are necessarily invalid. MERS or another party may very well be able to show at trial or the summary judgment stage that MERS' agency as "nominee" on a deed of trust constitutes a special power of attorney to transfer the interest in the underlying promissory note (or other debt) secured by the deed of trust. Where the scope of MERS' agency under a deed of trust is ambiguous, normal contractual interpretation principles should permit the parties to introduce parol evidence to explain the ambiguity. Contracts between MERS and the lender, notices to the borrower from the lender, and other such evidence may indicate that MERS' agency as a "nominee" extends to transfer of the note and mortgage.

legislative enactment supersedes any contrary common law or suggested UCC rule.

Finally, Plaintiff argued that the state court had noted that failure to pay a debt obligation was only a default if there were no excuse to nonpayment. In the cited case, *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983), the Nevada Supreme Court ruled there was a genuine issue of material fact whether the terms of the note in that case constituted usury or whether interest was charged above the rate provided by the note. In the present case, the note was entered into well after the usury law had been amended to permit any rate of interest and fees, making any usury claim not only implausible, but impossible, and Plaintiff does not allege being charged beyond what was permitted under the note. Plaintiff alleges at most fraud in the inducement, which the Court finds implausible.

There is a plausible claim for statutorily defective foreclosure under NRS section 107.080(2)(c). The action for breach of the implied covenant of good faith and fair dealing and/or interference with contractual relations is better characterized as a claim for promissory estoppel. Under this cause of action, Plaintiffs allege that when they requested a modification from Chase, Chase told them to default in order to obtain one; however, Chase had no intention of agreeing to a modification and used the default to foreclose. Plaintiffs plead no facts to support their conclusion that Chase intended to default without negotiating in good faith. A promise to negotiate is not a promise to modify. The fraud in the inducement claim is also unmeritorious. It is based on an alleged failure to disclose the loan terms or the fact that the loan would be securitized. The loan terms appear to have been disclosed in the FDOT. Plaintiffs signed the Fixed/Adjustable Rate Rider. In any case, Plaintiffs defaulted during the initial fixed-rate period, during which the rate was set at 5.625%, and before the interest rate could first reset in August 2010, so a failure to disclose the "sub-prime" terms of the note, even if true, could not have caused the present default. (*See* Rider 1, July 15, 2005, ECF No. 22-1, at 17). And the bare fact of the securitization of the loan is not alleged, nor could it plausibly be alleged, to have

affected the terms of the loan, so it is immaterial to the contract. Next, unjust enrichment cannot lie where there is an applicable contract, as here. *See Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (citing *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977); 66 Am. Jur. 2d *Restitution* §§ 6, 11 (1973)). There is also no claim for slander of title. Although the NOD may have been statutorily defective (because of who filed it) the claims of default are not alleged to be false.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 20, 22) are GRANTED in part and DENIED in part. All claims are dismissed except the claim for injunctive relief due to statutorily defective foreclosure.

IT IS FURTHER ORDERED that Defendants will cease foreclosure proceedings for one-hundred (100) days. During this period, Plaintiffs will make full, regular monthly payments under the note every thirty (30) days, with the first payment due ten (10) days after the date of this order. The amount of each payment will be according to the monthly payment as of the date of the NOD. Plaintiffs need not pay late fees or cure the entire amount of past default at this time. Failure to make monthly payments during the injunction period, however, will result in a lifting of the injunction.

IT IS FURTHER ORDERED that during the injunction period the parties will engage in the state Foreclosure Mediation Program, if available. If not available, Defendants will conduct a private mediation with Plaintiffs in good faith. The beneficiary must send a representative to the mediation with actual authority to modify the note, although actual modification is not required. Plaintiffs will provide requested information to Defendants in advance of the mediation in good faith.

IT IS FURTHER ORDERED that Defendants remain free during the injunction period to submit motions for summary judgment to show that MERS' agency included the ability to

transfer the underlying debt from CTX to Chase, in which case summary judgment on the remaining claim will be appropriate.

IT IS SO ORDERED.

Dated this 19th day of January, 2011.

_____
ROBERT C. JONES
United States District Judge